UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHONDA LARKIN, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, A BODY POLITIC INCORPORATED, <br><br> Defendant. | Case No. 17-cv-09298 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rhonda Larkin filed this lawsuit against her former employer, the Board of Education of the City of Chicago, for employment discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq*. The Board moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), contending that Larkin's claims are time-barred. For the reasons set forth below, the court denies the motion [45].

**Legal Standard**

Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). . . . To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014) (citations and internal quotation marks omitted); *see also Williams v. East-West Univ.*, No. 17 CV 7092, 2018 WL 4591863, at *1 (N.D. Ill. Sept. 25, 2018); *P-Americas, LLC v. Cent. States Se. & Sw. Area Pension Fund*, No. 13-cv-08808, 2014 WL 3858396, at *3 (N.D. Ill. Aug. 5, 2014).

"A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings under Rule 12(c)." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). At the same time, "Judges should respect the norm that complaints need not anticipate or

meet potential affirmative defenses.  If the facts are uncontested (or the defendants accept plaintiffs' allegations for the sake of argument), it may be possible to decide under Rule 12(c); if the parties do not agree, but one side cannot substantiate its position with admissible evidence, the court may grant summary judgment under Rule 56." *Id.* at 638.

Here, the Board seeks judgment on the pleadings on the basis of an affirmative defense.  The court limits its consideration to the pleadings.  *See Williams*, 2018 WL 4591863, at *1.

> For the purposes of a 12(c) motion, "[t]he pleadings include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).  In the Seventh Circuit, a "written instrument" includes "documents such as affidavits . . . [,] letters, and loan documentation." *Id.* at 453 (internal citations omitted).

*Felsenthal v. Travelers Prop. Cas. Ins. Co.*, No. 12-cv-07402, 2013 WL 469475, at *2 (N.D. Ill. Feb. 7, 2013); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The Seventh Circuit has explained in the context of Rule 12(b)(6) motions (and the court sees no reason why these principles would not also apply to Rule 12(c) motions): "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. . . . If a moving party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56" under Fed. R. Civ. P. 12(d).  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

In particular: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12(d); *see Geinosky*, 675 F.3d at 745 n.1; *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713–14 (7th Cir. 2013); *Williams*, 2018 WL 4591863, at *1; *Brack v. Dart*, No. 11-cv-08192, 2013 WL 2251741, at *1 (N.D. Ill. May 22, 2013); *Curry v. City of Chicago*, No. 10-cv-07153, 2013 WL 884454, at *2 (N.D. Ill. Mar. 8, 2013); *Krepps v. NIIT (USA), Inc.*, No. 11-cv-08787, 2012 WL 1532227, at *3–4 (N.D. Ill. May 1, 2012).

"A plaintiff, however, has much more flexibility in opposing a Rule 12(b)(6) motion . . . . [A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove."

2

*Geinosky*, 675 F.3d at 745 n.1.  Again, the court sees no reason why this principle would not also apply to Rule 12(c) motions.

Consistent with these principles, the court sets forth the facts in the light most favorable to Larkin and then turns to the Board's affirmative defense.  In describing the facts, the court considers the complaint (Dkt. 1), the documents attached to the complaint (which are the Equal Employment Opportunity Commission (EEOC) charge (Dkt. 1-1) and the EEOC Dismissal and Notice of Rights (Dkt. 1-2)), and the answer (Dkt. 11).[1]  The parties have reattached these documents, and attached other documents, to the motion for judgment on the pleadings and the response; the court addresses these documents separately below.

## Background

The Board of Education hired Rhonda Larkin around September 2002.  (Dkt. 1, Compl., ¶ 10.)  She held multiple positions with the Board, and most recently served as Principal at Alex Harley Academy.  (*Id.* ¶¶ 9, 11.)  On June 28, 2012, Larkin and the Board entered into a four-year employment agreement, covering Larkin's employment from July 1, 2012, through June 30, 2016.  (*Id.* ¶ 14.)

In 2013, Larkin required surgery on both knees for torn meniscuses.  (*Id.* ¶ 16.)  Larkin requested medical leave for the surgery and the Board approved her leave from January 2014 through February 2014.  (*Id.* ¶ 17.)  Larkin required multiple surgeries and requested three extensions of her leave in early 2014; the Board granted them, ultimately extending her leave through April 25, 2014.  (*Id.* ¶¶ 18–20.)  On or around March 28, 2014, Larkin requested an accommodation under the Americans with Disabilities Act (ADA).  (*Id.* ¶ 21.)  Larkin also requested that her medical leave and job protection be extended until May 2, 2014.  (*Id.* ¶ 22.)  Due to her medical condition and the torn meniscuses, Larkin needed assistance walking and was unable to walk up and down stairs.  (*Id.* ¶ 23.)

The Board denied Larkin's request in significant part.  (*Id.* ¶ 24.)  The Board did extend her job protection until May 2, 2014.  (*Id.* ¶ 25.)  However, it did not provide the necessary accommodations for her to be able to return to work by May 2, 2014, as her recovery was ongoing and she was still unable to go up and down stairs.  (*Id.* ¶¶ 26–27.)  Larkin was therefore forced to request another extension of her job protection past May 2, 2014.  (*Id.* ¶ 28.)  The Board denied her request.  (*Id.* ¶ 29.)

Larkin had accumulated sufficient leave days to cover her absence past May 2, 2014.  (*Id.* ¶ 30.)  Despite Larkin's request for time off due to her medical

---

[1] Docket entries are cited as "Dkt. [docket number]" followed by the page or paragraph number, as needed.   Page number citations refer to the ECF page number.

3

condition and even though she had accrued leave sufficient to cover her time off, the Board terminated Larkin on May 16, 2014. (*Id.* ¶¶ 31, 37.)[2]

On March 11, 2015, Larkin filed a charge with the EEOC. (Dkt. 1-1.) The EEOC issued a Dismissal and Notice of Rights on September 27, 2017, checking the box on the form indicating that it was closing the file because the charge was untimely. (Dkt. 1-2.)[3] Larkin received the Dismissal and Notice of Rights on October 2, 2017. (Dkt. 1 ¶ 4; Dkt. 1-2 at 3.) She filed this lawsuit on December 27, 2017.

On May 11, 2018, the Board filed its answer, denying the paragraphs in which Larkin alleged that she was terminated on May 16, 2014, and asserting affirmative defenses, including the timeliness of Larkin's charge. (Dkt. 11 ¶¶ 31, 37; *see also id.* at 9–10 (first and fourth affirmative defenses).) The parties proceeded with written discovery. (Dkts. 21, 26, 27, 29.) The parties appeared for a status hearing on May 22, 2019, during which the Board raised the timeliness of Larkin's EEOC charge. (Dkt. 44 (Norgle, J.).) After the status hearing, the Board filed this motion for judgment on the pleadings, contending that Larkin's claims fail as a matter of law because she did not file her EEOC charge within the 300-day filing period. (Dkt. 45.) While the parties were briefing the motion, the case was reassigned to this judge. (Dkt. 54.)

**Analysis**

"The ADA prohibits a 'covered entity' from discriminating against a qualified individual with a disability 'in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (quoting 42 U.S.C. § 12112(a)). "[T]he ADA's enforcement provision expressly incorporates § 2000e–5 of Title VII." *Stepney*, 392 F.3d at 239 (citing 42 U.S.C. § 2000e-5(e)(1) and 42 U.S.C. § 12117(a)). "Under Title VII, a plaintiff in Illinois must file an employment discrimination charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Stepney*, 392 F.3d at 239 (quoting § 2000e–5(e)(1) and citing cases). Accordingly, "claims for discrimination under the ADA also must be filed within 300 days 'after the alleged unlawful employment practice occurred.'" *Stepney*, 392 F.3d at 239 (quoting 42 U.S.C. § 2000e–5(e)(1), incorporated by 42 U.S.C. § 12117(a)).

---

[2] As discussed below, the Board disputes the May 16, 2014 date.
[3] The preprinted form states, "Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge." (Dkt. 1-2 at 1.)

4

> In discriminatory discharge cases, two elements are necessary to establish the date on which the "unlawful employment practice" occurred. First, there must be a final, ultimate, non-tentative decision to terminate the employee. . . . However, an employer who communicates a willingness to later change a final decision of termination, as through an appeals process, does not render a decision "tentative" and not final for the purposes of beginning the limitations period. . . . Second, the employer must give the employee unequivocal notice of its final termination decision. . . . Both of these elements are necessary to start the limitations period; neither alone is sufficient.

*Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258–59, 261 (1980), and *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002)); *see also Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 456 (7th Cir. 2018); *Ortony v. Nw. Univ.*, 736 F.3d 1102, 1103 (7th Cir. 2013); *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011); *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006).

Larkin filed her charge with the EEOC on March 11, 2015. (Dkt. 1, Compl. ¶ 3; Dkt. 1-1.) In her complaint, and in the EEOC charge, Larkin alleged that the Board terminated her on May 16, 2014. (Dkt. 1 ¶¶ 31, 37 (complaint); Dkt. 1-1 (EEOC charge, attached to complaint).) However, the EEOC dismissed the charge as untimely, checking the box for that reason on the Dismissal and Notice of Rights. (Dkt. 1-2 at 1 (attached to complaint).) In the answer, the Board denied Larkin's allegations that the Board terminated her on May 16, 2014, and asserted affirmative defenses of untimeliness. (Dkt. 11 ¶¶ 31, 37; *see also id.* at pp. 9-10 (first and fourth affirmative defenses).)

The Board now attaches a number of documents to its motion for judgment on the pleadings. (Dkts. 45-1 through 45-16.) The Board contends that Larkin's claim accrued on May 13, 2014 at the latest, that Larkin was required to file the charge by March 9, 2015, and that the March 11, 2015 charge was untimely. (Dkt. 45 at 7.)

Of the documents the Board attaches to its motion, the Board focuses mainly on two. (Dkt. 45 at 7 & n.3.) One is an email from Larkin to a CPS employee, dated May 5, 2014, stating, "I would like to return to work May 12, 2014. . . . I was not sure if I could return to work on May 12th, since I did not report on May 2nd. If I can no longer report to work please let me know. If I no longer have job protection, will I be given a similar assignment or will I be fired from CPS[?]" (Dkt. 45-11 at 2.)

The second is a CPS email dated May 8, 2014, which appears to be addressed to Larkin, notes that Larkin had not reported for work on May 2, 2014, and informs her that "[i]f you do not report for work Monday, May 12, 2014, the Board of

5

Education will presume your intent to separate and we will effectuate your resignation on 5/13/14." (Dkt. 45-12 at 2; *see also id.* at 4 (document that appears to be a copy of an identical letter).)

The Board attaches other documents to its motion as well, although it does not rely as heavily on them. Among the other documents, the Board attaches a letter addressed to Larkin, dated May 16, 2014, informing her, "You did not report back to work on May 2, 2014. The Board further accommodated you by granting another leave with job protection through May 11, 2014. You did not report back to work on May 12, 2014. As a result, the Board of Education has effectuated your resignation as of May 13, 2014. Pursuant to Section V. (d) of your Uniform Principal Performance Contract, your contract is terminated." (Dkt. 45-13 at 2.)[4]

Based principally on the May 8, 2014 CPS email to Larkin, as well as the May 5, 2014 Larkin email to CPS, the Board contends that Larkin was notified of her impending termination by May 8, 2014, and thus, should have known when she did not show up to work on May 12, 2014 that she would be terminated effective May 13, 2014. (Dkt. 45 at 7 & n.3 (motion, citing these two emails).) Thus, the Board contends that the claim accrued on May 13, 2014 at the latest, that Larkin had until March 9, 2015 to file the charge, and that the March 11, 2015 charge was untimely. (*Id.* at 7.)

Larkin does not contest the May 13, 2014 claim accrual date in her response brief, nor does she contend that her EEOC charge was timely filed. (Dkt. 55.) The Board argues that these arguments are therefore forfeited. (Dkt. 58 at 4.) However, in the context of a Rule 12(c) motion, the court is not convinced that it would be appropriate to consider the emails and other documents attached to the motion. As described above, on a motion for judgment on the pleadings, the court considers the pleadings—here, the complaint, documents attached to the complaint, and the answer. The only documents attached to the complaint are the EEOC charge and the Dismissal and Notice of Rights; no documents were

---

[4] Additional documents the Board attaches to its motion include other correspondence, Larkin's employment contract, and an email from an EEOC investigator to Larkin's former counsel regarding the EEOC's decision on the statute of limitations. The email explains, as relevant, that "the Commission is closing out this case with a Notice of Right to Sue as outside of the 300 day statute of limitations for filing. The charge was date stamped on March 11, 2014, and CP's [CP appears to stand for "Charging Party"] last day at Respondent was May 13, 2014. I understand that CP states she was notified of her discharge on the 16th; however, Respondent provided an email dated May 2 in which CP is notified that if she does not report for work on May 12, they will be effectuating her resignation on May 13th. Please note that you have 90 days from the date you receive the Notice of Right To Sue to proceed in federal court if you and Charging Party wish to argue the timeliness issue." (Dkt. 45-16 at 2.) Besides the Board's attaching this email to its motion, Larkin also attaches the email to the response. (Dkt. 55 at 11, Ex. B.) For the reasons explained in the text, the court does not consider any of these documents.

attached to the answer. The motion itself is not a pleading. Fed. R. Civ. P. 7(a). Except for the EEOC charge and the Dismissal and Notice of Rights, none of the emails or other documents attached to the motion were attached to the complaint.

There are exceptions, as described above, for "documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky*, 675 F.3d at 745 n.1. There is no basis to conclude that the documents are subject to proper judicial notice. As to whether the documents were incorporated by reference into the complaint:

> The incorporation-by-reference doctrine is meant to keep plaintiffs from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [their] complaint a document that prove[s] that [their] claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Despite courts' "relatively liberal" approach to the exception, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009), it remains a "narrow" one. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). It is aimed "at cases interpreting . . . a contract," *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998), and is broad enough to include documents incorporated into the contract by reference. *188 LLC*, 300 F.3d at 735 (incorporating by reference a form that defendant alleged the parties' agreement incorporated by reference). The documents must be "concededly authentic" and must not require "discovery to authenticate or disambiguate." *Tierney*, 304 F.3d at 738–39; *Levenstein*, 164 F.3d at 347 (the district court was within its discretion when, "noting that [plaintiff] wanted further discovery," it "chose to handle the case as a straightforward motion to dismiss, rather than converting it to a motion under Rule 56").

*Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, No. 17 CV 4723, 2019 WL 4189480, at *3 (N.D. Ill. Sept. 4, 2019).

Here, while the complaint refers to May 16, 2014 as the alleged date of termination (Dkt. 1 ¶¶ 31, 37), the complaint does not refer to any particular documents to establish that date. The court finds it difficult to conclude that the emails the Board cites are "critical to the complaint." *Cf. Fox v. Fifth Third Bank*, No. 19-cv-03232, 2020 WL 1330368, at *4 (N.D. Ill. Mar. 23, 2020) ("Other courts in this district have concluded that EEOC charges are central to Title VII claims, and therefore properly considered when submitted by a defendant in support of a motion to dismiss. However, that is not an appropriate course under the facts of this case.") (citation, internal quotation marks, and brackets omitted). The emails may be critical to the Board's affirmative defense. But a complaint need not anticipate affirmative defenses. Of the documents the Board attached to its motion, the only document that is not attached to the complaint but that may be critical to the

complaint is the employment contract. But the Board does not rely significantly on the contract for its argument here, so the court need not decide whether the contract is critical to the complaint.

Besides the exceptions already discussed, as the party opposing the motion, Larkin could have submitted materials outside the pleadings to show the facts she expects to be able to prove. *Geinosky*, 675 F.3d at 745 n.1. But she did not (with the exception of the email from the EEOC investigator to Larkin's former attorney, which is not between Larkin and CPS).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Rule 12(d); *Geinosky*, 675 F.3d at 745 n.1 ("If a moving party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56.") (citing Rule 12(d)). Furthermore, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12(d). Neither party has requested that the court convert the motion to a summary judgment motion. The court declines to do so. The Board is free to renew its argument on summary judgment at the appropriate time.

Finally, the court addresses Larkin's responses to the motion. Larkin contends that the 300-day filing deadline is not a jurisdictional prerequisite and that the Board waived any timeliness defense by not timely filing its motion for judgment. (Dkt. 55 at 3-5.) It is true that the 300-day charge-filing deadline is "not a jurisdictional prerequisite to filing a federal lawsuit, but rather, is more akin to a statute of limitations and subject to waiver, estoppel, and equitable tolling under appropriate circumstances." *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999); *see also Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849–50 (2019) (discussing Title VII's charge-filing requirement, and including "Title VII's time limit for filing a charge with the EEOC" in a list of nonjurisdictional "mandatory claim-processing rules and other preconditions to relief") (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Accordingly, a defense based on the 300-day filing deadline is subject to waiver.[5]

Larkin contends the Board waived this defense because the Board should have known about the defense in 2017 (when Larkin filed suit on December 27,

---

[5] Larkin's contention that *Fort Bend* "relaxed the procedural requirements" applicable here (Dkt. 55 at 2-3) is not persuasive. *Fort Bend* held that the charge-filing requirement is a "procedural prescription mandatory if timely raised, but subject to forfeiture if tardily asserted," as opposed to a jurisdictional requirement, which cannot be waived or forfeited. *Fort Bend*, 139 S. Ct. at 1846. *Fort Bend* did not change the applicable procedural requirements.

2017) and should have filed a motion with the court before the May 2019 status hearing. (Dkt. 55 at 5.) In response, the Board contends that it timely raised the 300-day filing deadline by including it in its answer, raising it with the court before the parties completed discovery, and filing its motion shortly thereafter. (Dkt. 58 at 5.)

"Affirmative defenses must ordinarily be included in the defendant's answer, but a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 309 (7th Cir. 2010) (citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(c)(1). The Board raised Larkin's failure to meet the 300-day filing deadline as an affirmative defense in its answer. (*See* Dkt. 11 at 9.) Nonetheless, Larkin appears to contend that the Board should have raised it again before the court's May 2019 status hearing. Larkin cites no authority to support this proposition aside from *Fort Bend*. *Fort Bend* did not address that proposition; it held that "[p]rerequisites to suit like Title VII's charge-filing instruction" are not jurisdictional, but "are properly ranked among the array of claim-processing rules that must be timely raised to come into play." 139 S. Ct. at 1846. The rules and the case law do not require the Board to do anything more. The Board asserted the 300-day filing deadline as an affirmative defense in its answer and filed a motion for judgment on the pleadings before discovery was complete. The Board did not waive or forfeit the defense. *See, e.g.*, *Phillips v. Walker*, 443 F. App'x 213, 215 (7th Cir. 2011) (defense of failure to exhaust administrative remedies not waived when "the defendants raised the nonexhaustion defense in their answers and pressed it in their motions for summary judgment"). (Dkt. 58 at 5.) The Board timely asserted the 300-day filing deadline as an affirmative defense and did not waive it.

## Conclusion

The motion for judgment on the pleadings [45] is denied.

Date: April 17, 2020                  /s/ Martha M. Pacold