UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHONDA LARKIN, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF EDUCATION OF THE CITY OF CHICAGO, <br><br> Defendant. | Case No. 17-cv-09298 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rhonda Larkin brought this suit against the Board of Education of the City of Chicago, Larkin's former employer, for discrimination and failure to accommodate in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. The Board moved for summary judgment. [118]. For the reasons below, the motion [118] is granted. This case is dismissed with prejudice. Final judgment will enter.

**BACKGROUND**

In deciding defendant's motion for summary judgment, the court views the evidence in the light most favorable to Larkin. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are undisputed unless otherwise noted.

Larkin was the principal of Alex Haley Academy. [119] ¶ 1; [121-2] ¶ 1.[1] After the Board of Education of the City of Chicago terminated her employment, she brought this two-count complaint alleging violations of the ADA.

In November and December 2013, Larkin tore the meniscuses in both her knees. [119] ¶ 19; [121-2] ¶ 19. These injuries required surgery and prevented her from performing some of her job duties without accommodation or additional time to recover. [119] ¶¶ 19–20; [121-2] ¶¶ 19–20. On December 23, 2013, Larkin

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

submitted a Family Medical Leave Act (FMLA) application for a leave of absence from January 6, 2014, until July 6, 2014. [119] ¶ 21; [121-2] ¶ 21. This form stated:

> I understand that pursuant to the [FMLA], if I return from my leave within 12 work weeks I have the right to return to the same or equivalent position (see CPS FMLA Policy). If I request and receive a leave or an extension of this leave of absence that is more than or beyond the 12 weeks, I understand that I may not have a right to return to the same or an equivalent position. I also understand that if I fail to report for duty, or to request an extension of this leave of absence before the expiration of my approved leave, my failure may be considered as abandonment of my position and could result in termination of my employment.

[119-8] (emphasis omitted); [119] ¶ 21; [121-2] ¶ 21.

The Board approved Larkin's initial FMLA request for a period from January 6, 2014, through February 7, 2014. [119] ¶ 22; [121-2] ¶ 22. That is, the Board approved the initial request, but for a period shorter than the time Larkin requested.

Thereafter, Larkin requested four extensions of her FMLA job-protected leave, all of which the Board approved. She received extensions from February 7, 2014, through February 28, 2014; from February 28, 2014, through March 25, 2014; from March 25, 2014, through April 25, 2014; and from April 25, 2014, through May 2, 2014. [119] ¶¶ 24, 26, 28, 31; [121-2] ¶¶ 24, 26, 28, 31. In connection with the last extension, the Board informed Larkin (in a letter from Dalila Bentley, Equal Opportunity Compliance Office Administrator) that "[o]n or before May 2, 2014, you will need to return to work." [119] ¶ 31; [121-2] ¶ 31; [119-19].

Larkin did not return to work on May 2, 2014. [119] ¶ 32; [121-2] ¶ 32. She contends that she informed the Board on April 22, 2014, about a planned surgery that was to take place on April 29, 2014. [121-2] ¶ 33; [119-4] at 36 (CM/ECF page number). Nonetheless, on May 2, 2014, she communicated with Board representatives that she was requesting another extension of her FMLA leave. [119] ¶ 36; [121-2] ¶ 36. That same day, a Board representative (Bentley) sent Larkin a letter stating that her job protection ended on May 2, 2014; that the Equal Opportunity Compliance Office (EOCO) would extend her job protection until May 12, 2014; that EOCO was unable to further extend the job protection period; and that Larkin should communicate with Employee Services about extending her leave and return to work procedures. [119] ¶ 38; [121-2] ¶ 38; [119-23].

On May 5, 2014, Larkin emailed Kerry Frank (Employee Services) asking for clarification on whether she would be able to return to work on May 12, 2014. [119]

2

¶ 39 ("I would like to return to work May 12, 2014 . . . I was not sure if I could return to work on May 12th, since I did not report on May 2nd. If I can no longer report to work please let me know. If I no longer have job protection, will I be given a similar assignment or will I be fired from CPS[?]"); [121-2] ¶ 39.

> On May 8, 2014, Frank emailed Larkin:
>
> Our office has received from you several inconsistent requests to extend your leave of absence. As you have been previously informed, you exceeded the job protection attached to your position as principal on April 1, 2014. The Board accommodated your initial request for additional leave with job protection, by granting you another leave through May 1, 2014. You did not report back to work on May 2, 2014.
>
> If you do not report for work Monday, May 12, 2014, the Board of Education will presume your intent to separate and we will effectuate your resignation on 5/13/14.

[119-25] at 2, 4; [119] ¶ 41; [121-2] ¶ 41. Larkin does not dispute that she received this communication on May 8, 2014. [121-2] ¶¶ 41, 42; [119-4] at 39–40 (CM/ECF page numbers).

Larkin did not report for work on May 12, 2014. [119] ¶ 43; [121-2] ¶ 43. On May 16, 2014, the Board sent Larkin a letter stating:

> As you have been previously informed on at least two occasions, you exceeded the job protection attached to your position as principal on April 1, 2014. The Board accommodated your initial request for additional leave with job protection, by granting you another leave through May 1, 2014. On April 30, 2014, the Board also granted several of your requested accommodations related to what you could do when you physically returned to your school on May 2, 2014. You did not report back to work on May 2, 2014. The Board further accommodated you by granting another leave with job protection through May 11, 2014. You did not report back to work on May 12, 2014. As a result the Board of Education has effectuated your resignation as of May 13, 2014. Pursuant to Section V (d) of your Uniform Principal Performance Contract, your contract is terminated.

[119] ¶ 45; [119-20]; [121-2] ¶ 45; [122] at 57. Larkin acknowledges that she was formally notified of her termination on May 16, 2014. *See* [121-2] ¶ 44; [119-20]; [119-4] at 40 (CM/ECF page number); [122] at 57.

Larkin filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on March 11, 2015. [1] ¶ 3. On September 27, 2017, the EEOC denied the charge as untimely and issued Larkin a right to sue notice. [1-2] at 1. Larkin filed this suit on December 27, 2017. The Board now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* The facts are viewed in the light most favorable to the nonmovant. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323.

## DISCUSSION

The Board argues that Larkin's claims are barred because she did not file her charge of discrimination with the EEOC before the mandatory 300-day deadline under the ADA. [118] ¶ 4. The Board contends that the time for Larkin to file an EEOC charge began to run at the latest on May 13, 2014, such that Larkin had until March 9, 2015, to file a charge. [120] at 8. The Board also contends that Larkin is not a "qualified individual" under the ADA and that there is no evidence that the Board failed to reasonably accommodate her or discriminated against her. *Id.* at 9–16.

The Board previously filed a motion for judgment on the pleadings on the basis that Larkin's claims are barred for failure to timely file an EEOC charge. [45]. In support of that motion, the Board attached documents outside the pleadings. The court declined to treat the motion as one for summary judgment and denied the motion. [77]. However, the court noted that the Board would be free to renew this argument at summary judgment. *Id.* at 8.

"The ADA adopts the enforcement procedures governing Title VII actions, including the filing procedures and timing requirements." *Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 574 (7th Cir. 1998); *see* 42 U.S.C. § 12117. "Under Title VII, a plaintiff in Illinois must file an employment discrimination charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (quoting 42

4

U.S.C. § 2000e-5(e)(1)); *Haynes v. Indiana Univ.*, 902 F.3d 724, 730–31 (7th Cir. 2018); *see also Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding that Title VII's charge-filing requirement is "mandatory without being jurisdictional"). That is, Larkin had to file a charge with the EEOC within 300 days of the unlawful employment practice. *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) ("The 300-day limit . . . begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured." (citation omitted)); *Stepney*, 392 F.3d at 240.

"In discriminatory discharge cases, two elements are necessary to establish the date on which the 'unlawful employment practice' occurred." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). First, the employer must make a "final, ultimate, non-tentative decision to terminate the employee." *Id.* (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258–59 (1980) (time limitation to file EEOC charge commenced at the time tenure decision was made and communicated to plaintiff, even though the eventual loss of employment did not occur until later)). However, communicating "a willingness to later change a final decision of termination, as through an appeals process, does not render a decision 'tentative' and not final for the purposes of beginning the limitations period." *Id.* "Second, the employer must give the employee 'unequivocal' notice of its final termination decision." *Id.* (citing *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002)). Under this *Ricks* rule, the limitations period begins "when an employer communicates an adverse employment decision to the employee, not when the full consequences of that action are felt." *Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 847 (7th Cir. 1992).

The Seventh Circuit applied the *Ricks* rule in *Wrolstad v. Mutual Insurance Society*, 911 F.3d 450 (7th Cir. 2018). There, the court held that a retaliation claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* accrued when the employer sent a letter "giving [the employee] clear notice of its decision to sue to enforce the waiver in his severance agreement—not when the company followed through on that decision one month later." *Id.* at 456.[2] The court concluded that the letter communicated a "final decision" because it "firmly and unequivocally articulated [the employer's] decision to sue [the employee] if he pursued his appeal." *Id.* Even though the letter communicated a conditional decision, it stated the employer's "official position." *Id.* Thus, the letter articulated a "final, unequivocal decision," not merely a "tentative state of affairs." *Compare id.* at 457 *with Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir. 2000) (holding that the limitations period did not run when an employer advised its employees that their "jobs *may* be in danger" if a possible sale of the company occurred but that "nothing was definite yet").

---

[2] For purposes of determining the date on which an unlawful employment practice occurred, Seventh Circuit caselaw applies the same framework to claims under both the ADA and the ADEA. *See, e.g.*, *Flannery*, 354 F.3d at 637.

5

Larkin did not file an EEOC charge within 300 days of the alleged unlawful employment practice. Larkin contends that the unlawful employment practices were the Board's failure to accommodate her and its termination of her employment (both of which Larkin alleges violated the ADA). These alleged unlawful employment practices occurred on or before May 13, 2014, when the Board effectuated Larkin's resignation. Further, on May 8, 2014, the Board informed Larkin by email that if she did not return to work on May 12, 2014, her resignation would be effective the next day. Under both *Ricks* and *Wrolstad*, this email constituted the employer's "official position," which articulated a "final, unequivocal decision." *See Ricks*, 449 U.S. at 258; *Wrolstad*, 911 F.3d at 456–57. Therefore, May 13, 2014 is the last date of any alleged unlawful employment practice, so at the latest, Larkin had 300 days from May 13, 2014—that is, until March 9, 2015—to timely file a charge. Larkin filed her EEOC charge on March 11, 2015, two days after the deadline.

Larkin's brief does not respond to the Board's contention that she had 300 days from May 13, 2014—again, the day the Board told her that it would effectuate her resignation if she did not return to work on May 12, 2014—to file a charge. Larkin does state in the facts section of her brief that "on May 16, 2014, the Board fired Plaintiff for her failure to return to her position by May 12, 2014." [121-1] at 5. But in the argument section of her brief, her only arguments with respect to timeliness are that, even assuming for the sake of argument that she was in fact a day late, her claims are not time-barred because administrative exhaustion is not a prerequisite to suit, and that the Board failed to timely raise administrative exhaustion. *Id.* at 5–7.[3] She makes no argument about when the 300-day clock started. Thus, the argument is forfeited. *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (stating that "perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived" (quoting *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021))); *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

In her Local Rule 56.1 statement of additional facts, Larkin states that she was not "terminated" until May 16, 2014—the day the Board sent her a letter memorializing her involuntary resignation. [121-3] ¶ 5; [122] at 57. But raising legal arguments in the Local Rule 56.1 statement of additional facts rather than in the briefs is improper. *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018). This argument could be disregarded on that basis alone.

---

[3] The court previously concluded (in deciding the Board's motion for judgment on the pleadings) that these arguments were unpersuasive, [77] at 8–9 & n.5, and as noted below, Larkin has not offered persuasive reasons that the court's prior determinations on these arguments were erroneous.

6

But even on the merits, the argument is not persuasive. As indisputably demonstrated by the record, Larkin's termination was effective on May 13, 2014. Larkin does not contest that the Board told her on May 8, 2014, that if she did not report back to work on May 12, 2014, it would "presume [her] intent to separate" and would "effectuate [her] resignation" on May 13, 2014. [119] ¶ 41; [119-4] at 39–40 (CM/ECF page numbers). Larkin also does not dispute that she did not return to work on May 12, 2014. The May 16 letter merely memorialized that the Board had "effectuated [Larkin's] resignation as of May 13, 2014." [122] at 57.

To the extent that Larkin's passing assertion (in the facts section of her brief and her Local Rule 56.1 statement of facts) that she was terminated on May 16, 2014, could be construed as an argument that she did not discover her May 13, 2014 termination until receiving the May 16, 2014 letter from the Board, the argument is not persuasive. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The discovery rule can operate to "postpone[] the beginning of the limitations period" in instances where a plaintiff does not discover his or her injury (here, termination) until after it has occurred. *Id.* That rule does not save Larkin's claims. The uncontested evidence—including Larkin's own testimony—is that she received and understood the email on May 8, 2014, and that as of the May 8 email (before receiving the confirmation letter on May 16, 2014), she was aware that if she did not report to work on May 12, the Board would effectuate her resignation the next day. [119-4] at 39–40 (CM/ECF page numbers). In short, Larkin knew of her termination on the day it was effectuated. Thus, the 300-day clock for the EEOC charge began running on May 13, 2014.

Larkin argues that the Board failed to timely raise administrative exhaustion and that administrative exhaustion is not a prerequisite to suit. [121-1] at 5–7. But Larkin made these same arguments in opposition to the Board's motion for judgment on the pleadings, and the court rejected them. [77] at 8–9 & n.5. Larkin has not offered persuasive reasons that the court's prior determinations on these arguments were erroneous. For the same reasons in the court's prior order, the Board has timely asserted as an affirmative defense Larkin's failure to file a charge within the 300-day deadline. *Id.* at 9. Larkin's arguments that *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843 (2019), relaxed the procedural requirements for timely filing an EEOC charge remain unpersuasive. [77] at 8 & n.5.

Larkin's ADA claims are barred because she did not timely file an EEOC charge. The court does not reach the Board's additional arguments in support of its motion for summary judgment.

## CONCLUSION

The Board's motion [118] for summary judgment is granted. This case is dismissed with prejudice. Final judgment will enter.

Date: March 31, 2022 /s/ Martha M. Pacold

8